IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE P. SULLIVAN, et al.,           :

    Plaintiffs,                      :

v.                                   :       Civil Action No. GLR-14-1426

CORPORAL AL FRIEDMAN, et al.,        :

    Defendants.                      :

## MEMORANDUM OPINION

Pending before the Court is Defendants', Corporal Al Friedman and Baltimore County, Maryland, Motion for Summary Judgment (ECF No. 29). Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Motion will be granted.

## I. BACKGROUND

On June 2, 2009, TEGSCO, LLC, d/b/a AutoReturn Baltimore ("AutoReturn") entered into a contract with Baltimore County to provide an automated dispatch and management system to support all activities associated with police-initiated towing in Baltimore County. The Baltimore County Police Department ("BPD") provided to AutoReturn a list of existing "Police Initiated Towing Licensees" ("Licensees") performing accident towing services. AutoReturn then entered into "Licensed Service Provider Agreements" with most of the then-existing police initiated towers in Baltimore County. Since that time AutoReturn has been responsible for all municipal towing management and logistics in Baltimore County.

Ron Perry, an AutoReturn Service Manager, oversees Baltimore County's police-initiated towing operations. By email dated October 21, 2009, Perry sought verification of the tow reporting areas from all existing Licensees. Plaintiff, Sullivan & Sons, Inc.,[1] never objected to the tow reporting areas as outlined in Perry's October 21, 2009 email. AutoReturn's fully automated dispatch system, incorporating Baltimore County's tow reporting areas, was implemented on January 4, 2010. On August 11, 2010, Defendant Friedman allegedly denied motorist Paul Bonolis's request for a specific tower after a heavy duty equipment accident in one of the Sullivans' assigned tow district.

On April 25, 2013, the Sullivans filed a Complaint in the Circuit Court for Baltimore County, Maryland, alleging Defendants, Friedman, Chief James W. Johnson, and Baltimore County, in concert and individually, on or about August 11, 2010, and continuing to the date of filing the Complaint, denied the Sullivans lawful access to specific geographic locations in Baltimore County for towing, salvage, and recovery operations. The Complaint alleges tortious interference with a prospective advantage (Count I), negligent hiring (Count II), respondeat superior (Count III), and violations of procedural due process (Counts IV-V) and equal protection (Count VI) under the Fourteenth Amendment. (ECF No. 2).

---

[1] Plaintiff Sullivan & Sons, Inc. is a Maryland Corporation engaged in the business of towing, salvage, and recovery. Plaintiff Deborah M. Sullivan is the majority owner of Sullivan & Sons, Inc. with her husband, Plaintiff Wayne P. Sullivan (hereinafter collectively referred to as the "Sullivans").

On April 28, 2014, Defendants removed the action to this Court.[2] (ECF No. 1).  On April 28, 2014, the Court granted Defendant James Johnson's Motion to Dismiss the Complaint.  As a result, the Sullivans' claims for negligent hiring (Count II) and respondeat superior (Count III) were also dismissed.  (See ECF No. 6). Defendants now move for summary judgment as to the remaining claims.  The Motion is ripe for disposition.

## II. DISCUSSION

### A.   **Standards of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith

---

[2] Baltimore County was not served with the Complaint until March 31, 2014.  (Notice of Removal ¶ 7, ECF No. 1).  By agreement, counsel accepted service on behalf of Friedman on April 21, 2014.  (Id.).  Notice of removal was, therefore, timely filed.  See 28 U.S.C. § 1446 (2012) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal.").

Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

**B.   Analysis**

**1.   Constitutional Claims**

First, Defendants argue the Sullivans' constitutional claims are barred by the statute of limitations. The Court agrees.

There is no federal statute of limitations applicable to actions brought under 42 U.S.C. § 1983 (2012). See Burnett v. Grattan, 468 U.S. 42, 48 (1984). The Court, therefore, is required to apply the analogous statute of limitations of the state where the federal court sits. Id. Here, all of the Sullivans' claims are subject to the three-year-default statute of limitations created by Md.Code.Ann., Cts. & Jud.Proc. § 5-101 (West 2015). See Owens v.

4

<u>Okure</u>, 488 U.S. 235, 241 (1989); <u>see also</u> <u>Owens v. Balt. City</u> <u>State's Attorney's Office</u>, 767 F.3d 379 (4th Cir. 2014) (affirming that the Maryland statute of limitations, which affords plaintiffs three years to file a personal injury action, applies to § 1983 claims), <u>cert. denied sub nom.</u> <u>Balt. City Police Dep't v. Owens</u>, 135 S. Ct. 1893 (2015); <u>see also</u> <u>Doe v. Archdiocese of Wash.</u>, 689 A.2d 634, 637 (Md.Ct.Spec.App. 1997) ("The Legislature has settled upon a three-year period of limitations as a reasonable time to bring suit in most cases."). The accrual date of a § 1983 cause of action, however, is resolved by federal law. <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).

Under federal law, the Sullivans' § 1983 cause of action accrues, and the limitation period commences, when the Sullivans knew or had reason to know of their injury. <u>Owens</u>, 767 F.3d at 389. A plaintiff knows or has reason to know of its injury when it possessed sufficient facts about the harm alleged that reasonable inquiry will reveal its cause of action. <u>Nasim v. Warden, Md.</u> <u>House of Corr.</u>, 64 F.3d 951, 955 (4th Cir. 1995). The Court will, therefore, "determine the accrual of [this] action by looking to the event that should have alerted the typical lay person to protect his or her rights." <u>Owens</u>, 767 F.3d at 404 (quoting <u>D'Ambrosio v. Marino</u>, 747 F.3d 378, 384 (6th Cir. 2014)).

Here, the Sullivans' claims are predicated on the alleged reassignment of specifically assigned and licensed tow districts in Baltimore County. In support of their claim, the Sullivans attach

to their Response to Motion for Summary Judgment a list of Prior Tow Reporting Areas (Resp. Mot. Summ. J. ["Pls.' Resp."] Ex. 4, ECF No. 33-6) and a list of Subsequent Tow Reporting Areas (Pls.' Resp. Ex. 5, ECF No. 33-7).  A careful review of the assigned reporting areas demonstrates that the Sullivans were assigned three less primary towing areas, one additional secondary towing area, and 125 less heavy duty towing areas upon the implementation of AutoReturn's fully automated dispatch system on January 4, 2010. (Compare Pls.' Resp. Exs. 4, 5).

The Subsequent Tow Reporting Areas, however, are attached to an email dated October 21, 2009, in which Perry specifically sought verification of the tow reporting areas from all existing Licensees.  (Pls.' Resp. Ex. 5, at 2).  The Sullivans never objected to the tow reporting areas as outlined.  Further, the Sullivans do not offer any evidence of subsequent changes to the assigned towing areas.  Thus, the undisputed record evidence demonstrates that the Sullivans possessed sufficient facts about the harm alleged on October 21, 2009.

Nevertheless, the Sullivans argue the continuous violation doctrine preserves the statute of limitations in this case based on the Defendants' continuing course of conduct.  The continuous violation doctrine tolls the statute of limitations where the violations are continuous in nature.  Litz v. Md. Dep't of Env't, 76 A.3d 1076, 1089 (Md. 2013) (quoting MacBride v. Pishvaian, 937 A.2d 233, 240 (Md. 2007)).  First, as discussed above, the

Sullivans do not offer any evidence of subsequent changes to the assigned towing areas after the implementation of AutoReturn's fully automated dispatch system.   Moreover, Friedman and Officer First Class Scott Keppler[3] both affirmed, and the Sullivans do not dispute, that the specifically assigned towing districts could not have been manually manipulated after the implementation of the automated dispatch system.   (Al Friedman Decl. App. Part I, at 19, ECF No. 29-2); (Scott Keppler Decl. App. Part I, at 24).

Thus, all of the alleged economic harm resulting from each instance in which the Sullivans were denied access to a specific tow area are "merely the continuing ill effects" from the initial allegedly tortious act of changing the assigned towing areas, and not a "series of acts or course of conduct that would delay the accrual of a cause of action to a later date." Litz, 76 A.3d at 1090 (quoting MacBride, 937 A.2d at 240-41).   The Court concludes, therefore, that the Sullivans' constitutional claims began to accrue on October 21, 2009.

Because the statute of limitations applicable in this case is three years, any accrued claim filed after October 21, 2012, is time-barred. The Sullivans filed this lawsuit on April 25, 2013. Consequently, their constitutional claims are untimely and Defendants are entitled to judgement as a matter of law.

---

[3] Officer Keppler is the liaison between AutoReturn and the BPD.   On July 7, 2008, he took over responsibility for running the towing unit under the supervision of Friedman and has handled those responsibilities since that time.

Second, even assuming the Sullivans' constitutional claims are not barred by the statute of limitations, the claims fail because the Sullivans have failed to demonstrate a constitutionally protected property interest in an assigned towing district.  When considering any due process claim, the starting point is identifying a constitutionally protected property interest. Gardner v. City of Balt. Mayor & City Council, 969 F.2d 63, 68 (4th Cir. 1992); see also Frall Developers, Inc. v. Bd. of Cty. Comm'rs for Frederick Cty., No. CCB-07-2731, 2008 WL 4533910, at *8 (D.Md. Sept. 30, 2008) ("[T]he 'starting point' for analyzing any procedural due process claim is to determine whether the plaintiff has a protected property interest 'sufficient to trigger federal due process guarantees.'" (quoting Scott v. Greenville Cty., 716 F.2d 1409, 1418 (4th Cir. 1983))).  Property interests under the Fourteenth Amendment "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Id. (alteration in the original) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

In Roth, the Supreme Court of the United States explained that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  408 U.S. at 577.  Under this approach, any significant discretion conferred upon the BPD and AutoReturn to define the BPD's assigned towing district defeats

the Sullivans' claim of having a property interest in being assigned to a specific towing district. Gardner, 969 F.2d at 68. Thus, the Sullivans' constitutional property interest in an assigned towing district-if they have one at all-is created and defined by Baltimore County Code §§ 21-16-101 et seq.

Under § 21-16-111.1(c)(3), AutoReturn is not required to offer a police-initiated towing contract to every police-initiated towing Licensee. Upon execution of a contract, however, AutoReturn may not cancel an executed contract unless the license has been revoked or the Licensee has an opportunity to resolve the dispute through arbitration. See § 21-16-111.1 (Editor's note). Further, Section 5 of Bill No. 67-07 provided AutoReturn with the discretion to add a new police initiated towing licensee in any geographic area upon the expiration of 180 days after the execution of a contract with the person who is performing accident towing services within that geographic area. See id. Thus, while AutoReturn may not revoke a license without notice and an opportunity to be heard, the Baltimore County Code does confer upon AutoReturn significant discretion to assign towing districts to specific Licensees.

Here, the Sullivans do not allege their license was revoked or suspended; merely that they were denied access to an assigned towing district as of August 11, 2010, to the date of the filing of their Complaint. August 11, 2010, is more than 180 days after September 4, 2009, the date on which the Sullivans executed a contract with AutoReturn. (See Defs.' Mot. Summ. J. App. Part I

9

58, ECF No. 29-2). Thus, to the extent the Sullivans allege they were deprived a constitutionally protected property interest in a specific towing district as of August 11, 2010, the claim fails as a matter of law.[4]

## 2.    Tortious Interference With a Prospective Advantage

The Sullivans' claim of tortious interference with a prospective advantage is similarly barred by the statute of limitations.  Under Maryland law, a three year limitation period applies to a claim of interference with economic relations and/or prospective advantage. Md.Code.Ann., Cts. & Jud.Proc. § 5-101; see also Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Ill., 66 F.Supp.2d 681, 687 (D.Md. 1999).  To the extent the Sullivans' claim is predicated upon the change in tow reporting areas prior to the implementation of AutoReturn's fully automated dispatch system on January 4, 2010, the Court has already concluded that the Sullivans possessed sufficient facts about the harm alleged on October 21, 2009.  More than three years prior to the filing of this lawsuit on April 25, 2013.  Consequently, the Sullivans' claim of tortious interference with a prospective advantage is untimely and Defendants are entitled to judgement as a matter of law.

---

[4] The Court notes that the Sullivans failed to allege or otherwise identify any specific towing district to which they were assigned but denied access and, therefore, failed to demonstrate a "right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To the extent the Sullivans' claim of tortious interference with a prospective advantage is predicated upon the allegation that Friedman denied an owner's request for a specific tower on August 11, 2010, the claim fairs no better. First, the undisputed evidence demonstrates that Friedman could not have engaged in any unlawful conduct calculated to cause damage to the Sullivans; and, second, the Sullivans have failed to establish an injury to a prospective economic relationship.

In Maryland, to prove a claim of tortious interference with a prospective advantage, a plaintiff must show:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

Audio Visual Assocs., Inc. v. Sharp Elec. Corp., 210 F.3d 254, 261 (4th Cir. 2000) (quoting Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc., 650 A.2d 260, 269 (Md. 1994)). "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful." Alexander, 650 A.2d at 271.

Here, the Sullivans fail to establish that Friedman engaged in any unlawful conduct. The incident in dispute was alleged to involve an overturned vehicle at the intersection of Eastern Avenue at Martin Boulevard on August 11, 2010. (See Defs.' Mot

11

Summ. J. App. Part II, at 152, ECF No. 29-3). According to the BPD's Computer-Aided Dispatch system, however, the incident in question occurred on May 6, 2010 at 3:08pm. (See App. Part II, at 87). On May 6, 2010, Friedman's work hours were 6:30 am to 2:30 pm. (Second Friedman Decl. App. Part II, at 86). Additionally, the BPD's payroll records indicate that on May 6, 2010, Friedman was charged three hours of optional leave. (Id. at 88). Thus, the undisputed evidence demonstrates that Friedman worked from 6:30 am until 11:30 am on the day of the alleged incident and, therefore, could not have been present at the accident scene at 3:08 pm as alleged in the Complaint.

Despite the Sullivans' contention, Paul Bonolis could not unequivocally identify Friedman as the officer who denied his request for a specific tower. (See Bonolis Dep. 13:2-21, Jan. 7, 2015, ECF No. 33-14) (speculating as to whether Friedman was present at the scene of the accident). "The nonmoving party 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

Moreover, the Sullivans have failed to establish injury to a prospective economic relationship because they failed to allege or otherwise demonstrate that they were assigned to the towing district in which the May 6, 2010 accident occurred.

Accordingly, the Sullivans' claim of tortious interference with a prospective advantage fails as a matter of law.

### III. CONCLUSION

For the reasons given above, Defendants' Motion for Summary Judgment (ECF No. 29) is GRANTED.  A separate Order will follow.

Entered this 2nd day of September, 2015

/s/

_____
George L. Russell, III
United States District Judge